## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| BOOMERANG SYSTEMS, INC., *et al.*, [1] | ) | |
| | ) | Case No. 15-11729 (MFW) |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| LIBERTY GRANDE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 15- |
| | ) | |
| BOOMERANG SYSTEMS, INC., and | ) | |
| BOOMERANG SUB, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND ACCOUNTING

Plaintiff, Liberty Grande, LLC ("Liberty Grande"), pursuant to Rule 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), 28 U.S.C. §§ 2201 and 2202 and 11 U.S.C. § 105(a), seeks a Judgment (i) declaring that pursuant to 11 U.S.C. § 541(d), the Segregated Funds in the Dedicated Bank Account (as defined below), do not constitute property of the Debtors' estates and as such must be immediately turned over by the Debtors to Liberty Grande, and (ii) directing the Debtors to provide an accounting of funds that were in the Dedicated Bank Account from March 1, 2015 through the Petition Date, and in support thereof alleges as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's identification number are as follows: (i) Boomerang Systems, Inc. (6487) (Case No. 15-11729), (ii) Boomerang Sub, Inc. (3805) (Case No. 15-11731), (iii) Boomerang USA Corp. (0521) (Case No. 15-11732), and (iv) Boomerang MP Holdings Inc. (4081) (Case No. 15-11733). The address for each of the Debtors is 30 A Vreeland Road, Suite 150, Florham Park, New Jersey 07932.

1

## PARTIES AND JURISDICTION

1.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157, 1334, 2201 and 2202.   This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Plaintiff Liberty Grande is a limited liability company existing under the laws of the state of Florida, with its principal place of business located at 201 North Ocean Drive, Hollywood, Florida 33019.

3.      Defendant Boomerang Systems, Inc. ("Boomerang Systems") is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 30 A Vreeland Road, Suite 150, Florham Park, New Jersey, 07932.

4.      Defendant Boomerang Sub, Inc. ("Boomerang Sub", and with Boomerang Systems, the "Debtors") is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 30 A Vreeland Road, Suite 150, Florham Park, New Jersey, 07932.

## PROCEDURAL HISTORY

5.      On August 18, 2015 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware, with the lead case of Boomerang Systems assigned Case No. 15-11729 (MFW).

6.      The Debtors are managing their affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

7.      On September 2, 2015, the United States Trustee filed a notice of formation of an official committee of unsecured creditors, which was amended on September 3, 2015. (Case No. 15-11729 (MFW), D.I. 72 and 80).

PHIL1 5044050v.1

8.      By agreement of the Debtors and Liberty Grande, and as memorialized by certain orders of this Court, the Debtors agreed not to spend any of the Segregated Funds pending agreement or adjudication by this Court. *See* Case No. 15-11729 (MFW), D.I. 103, ¶15; D.I. 200, ¶23.

## FACTUAL BACKGROUND

9.      Prior to the Petition Date, Liberty Grande and Boomerang Systems entered into that certain *Automated Parking Purchase and Software Licensing Agreement* (the "Liberty Grande Contract") dated August 7, 2014, pursuant to which Boomerang Systems was to install an automated garage (the "Garage" or "Garage Project") at a hotel-condominium project in Hollywood, Florida (the "Hollywood Costa Project"). A true and correct copy of the Liberty Grande Contract, without attachments, is annexed hereto as **Exhibit "A"** and incorporated herein.

10.     Section 3.4 of the Liberty Grande Contract provides, in relevant part, as follows:

To provide Buyer [Liberty Grande] with assurance as to the use of contractual payments to Seller [Boomerang Systems], Seller **shall** establish a **dedicated bank account** into which Buyer will transfer funds. Buyer will make payments into the dedicated account per the Payment Schedule set forth in this Agreement. Seller will provide the Buyer with monthly bank statements and a report for **each payment requisition that sets forth the allocation of each payment** to either: (i) internal labor, (ii) materials, or (iii) subcontracted work. Seller will also provide a Sworn Statement with each requisition from an officer of [Boomerang Systems] that confirms that the payment is being utilized **for the [Hollywood Costa] Project and not for any other project."** (Emphasis and underlining added).

11.     Pursuant to Section 3.4 of the Liberty Grande Contract, Boomerang Systems provided monthly affidavits signed by Scott Sheppard, its former CFO, which stated, in relevant part, with respect to funds requested by Boomerang Systems, that "Boomerang [Systems] hereby

certifies that funds in Application #... will be used for the Costa Hollywood Liberty Grande Hotel Project **and not for any other project**." (Emphasis and underlining added).

12.    The last draw request was submitted in February 2015; no draw request was submitted in March 2015 (or any subsequent month) because, as explained by Boomerang Systems' CFO to Alan Powell of Liberty Grande in an email dated April 14, 2015 sent at 1:06 p.m., Boomerang Systems "did not feel the milestones [set forth in the Liberty Grande Contract] had been met."

13.    Pursuant to Section 3.4 of the Liberty Grande Contract, funds of Liberty Grande were deposited into a segregated bank account at Zions First National Bank, N.A. in Utah in the name of "Boomerang Sub Inc DBA Boomerang Systems Inc" ending in 3594 (the "Dedicated Bank Account"). These funds were deposited into the Dedicated Bank Account by checks drawn on a bank account of Liberty Grande which were forwarded to Boomerang Systems and then deposited into the Dedicated Bank Account by one or both of the Debtors.

14.    The sole source of one hundred percent (100%) of the funds placed in the Dedicated Bank Account was Liberty Grande; under section 3.4 of the Liberty Grande Contract those funds were to be used solely for the construction of the Garage at the Hollywood Costa Project.

15.    As of March 31, 2015, there was $1,329,450.05 in the Dedicated Bank Account.

16.    As of June 30, 2015, there was $923,696.53 in the Dedicated Bank Account.

17.    As of July 31, 2015, there was $811,701.34 in the Dedicated Bank Account.

18.    As of the Petition Date there was approximately $620,000.00 in the Dedicated Bank Account; a screen shot of the electronic version of the Dedicated Bank Account reflects

that $620,964.55 was on hand in that Account as of September 15, 2015 (the "Segregated Funds").

19.    Between the inception of the Liberty Grande Contract and the Petition Date, Liberty Grande caused a total of $2,750,724.48 of its funds to be placed into the Dedicated Bank Account.

20.    Debtors stopped working at the Costa Hollywood Project on August 14, 2015. Debtors have not provided any goods or services as contemplated by the Liberty Grande Contract since at least August 14, 2015.

21.    In paragraph 78 of his first day declaration, Debtors' CEO James Gelly noted that "[t]he Debtors...maintain funds at Zions First National Bank for the expenditure **on certain projects** where RoboticValet® is being installed or serviced." Case No. 15-11729 (MFW), D.I. 13, ¶78 (Emphasis supplied).

22.    In their cash management motion, the Debtors stated, in relevant part, that "[t]wo of the Accounts at Zions [First National Bank] are directly related to two contracts to provide Boomerang's RoboticValet® parking [footnote omitted]: one at the Costa [Hollywood] [P]roject... Th[is] Account[] **required** an authorized Debtor-employee to represent that a disbursement was related **to that specific project before a disbursement could be made** from [this] Account." Case No. 15-11729 (MFW), D.I. 4, ¶12 (Emphasis and underlining added).

23.    As reflected in an Affidavit filed with this Court from Ronald Nadler, a former senior executive of development of Hollywood Costa Project, (i) the Debtors' CEO, James Gelly, acknowledged to Mr. Nadler that the Dedicated Bank Account contained only funds deposited by Liberty Grande and such funds were segregated and could not be used for any project other than the Hollywood Costa Project, and (ii) the Debtors' new CFO, Steve Marble,

acknowledged to Mr. Nadler that the funds in the Dedicated Bank Account were to remain segregated and be used only for the Hollywood Costa Project. Case No. 15-11729 (MFW), D.I. 70, Exhibit "B," ¶8.

24.     By Order dated October 2, 2015, the Court approved the Debtors' rejection of the Liberty Grande Contract. Case No. 15-11729 (MFW), D.I. 194. Rejection constitutes a breach of the Liberty Grande Contract by Boomerang Systems immediately preceding the Petition Date.

25.     Both the final cash management order and DIP financing order preserve the Segregated Funds pending further order from this Court. *See* Case No. 15-11729 (MFW), D.I. 103, ¶15; D.I. 200, ¶23.

26.     In paragraph 11 of the Declaration of James Gelly in Support of Debtors' Opposition to Motion of Campus Acquisitions 308 Green, LLC and Here Lawrence Property Owner, LLC (I) to Convert Debtors' Cases to Chapter 7 or, In the Alternative, (II) to Appoint a Chapter 11 Trustee (the "Gelly Declaration"), Mr. Gelly stated, in relevant part, that "Boomerang has **only** drawn on the account [the Dedicated Bank Account] for costs associated with the Costa Garage and has so represented to Liberty [Grande]. Further, pursuant to Liberty[ Grande's] request, Boomerang has provided Liberty [Grande] with information concerning the remaining balance in that account. With the Court's approval, and upon rejection of the contract relating to the Costa Garage, Boomerang will return the funds [the Segregated Funds] in the account [the Dedicated Bank Account] to Liberty [Grande]." Case No. 15-11729 (MFW), D.I. 154, Ex. "A," ¶11 (emphasis and underlining added).

27.     The foregoing statements are consistent with sworn testimony given by Mr. Gelly on behalf of the Debtors on September 22, 2015 in their Chapter 11 cases. Specifically, Mr. Gelly testified, in relevant part, that the (i) "account" identified in ¶11 of the Gelly Declaration

was the Dedicated Bank Account, Gelly Dep. at 288:20-23; (ii) source of the Segregated Funds was Liberty Grande, *id.* at 288:24 through 289:1-5, and 291:5-9; (iii) Liberty Grande Contract "specified that a separate account be opened into which the developer [Liberty Grande] would place monies for the construction of the [G]arage and that…the funds would be used to purchase direct components for the Costa Hollywood [P]roject and that our chief financial officer would make a form of certification to say that such happened and this discipline or this mechanism in the [Liberty Grande C]ontract was followed and **has been <u>since the [Liberty Grande C]ontract</u> <u>was executed</u>**, *id.* at 289:9-19; and (iv) Segregated Funds could not have been used for any project other than the Costa Hollywood Project, explaining that Boomerang Systems "had to, in effect, give a sworn statement that th[e Segregated Funds] were used and had been used <u>**only** </u>**for the Costa Hollywood [P]roject. And we followed that procedure**," *id.* at 289:22-24 through 290:1-6 (emphasis and underlining added).  A true and correct copy of the Gelly Deposition transcript is attached hereto as **Exhibit "B"** and incorporated herein.

## COUNT I
**[Declaration that Segregated Funds are not part of the**
**Debtors' estates by operation of 11 U.S.C. §541(d)]**

28.     Liberty Grande incorporates by reference paragraphs 1 through 27 as if fully set forth herein.

29.     This is an action for Declaratory Judgment pursuant to Rule 7001(9), Fed. R. Bankr. P., and 28 U.S.C. §§ 2201 and 2202.

30.     Section 541(d) of the Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest,…becomes property of the estate…only to the extent of the debtor's legal title to such

property, but not to the extent of any equitable interest in such property that the debtor does not hold."

31.    At most, because the Dedicated Bank Account is in the name of Boomerang Sub d/b/a Boomerang Systems, the Debtors hold bare legal title to the Segregated Funds.

32.    Because none of the Debtors hold any equitable interest in the Segregated Funds, those funds are excluded from their bankruptcy estates by operation of Section 541(d) of the Bankruptcy Code.

WHEREFORE, Liberty Grande seeks a declaratory judgment pursuant to Bankruptcy Rule 7001(9) and 28 U.S.C. §§ 2201 and 2202 that the Segregated Funds (i) are excluded from property of the Debtors' estates by operation of Section 541(d) of the Bankruptcy Code, (ii) must be immediately turned over by the Debtors to Liberty Grande, and (iii) granting any other and further declaratory relief which is otherwise just and proper and to which Liberty Grande is entitled.

## COUNT II
**[Declaration Requiring an Accounting of Funds in the Dedicated Bank Account from March 1, 2015 through the Petition Date]**

33.    Liberty Grande incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

34.    Section 105(a) of the Bankruptcy Code provides, in relevant part, that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

35.    The last report of expenditures of funds from the Dedicated Bank Account provided by Debtors to Liberty Grande was for the month of February 2015. Debtors should,

therefore, be required to provide a full accounting of the disposition of all funds in the Dedicated Bank Account between March 1, 2015 and the Petition Date.

36.     Based on information and belief, between March 2015 and the Petition Date, approximately $709,450.05 was removed from the Dedicated Bank Account.   The Debtors should be required to account for this expenditure of funds consistent with the terms and conditions of section 3.4 of the Liberty Grande Contract.

WHEREFORE, Liberty Grande seeks a declaratory judgment (i) requiring that Debtors provide a full accounting for the  Dedicated Bank Account for the time period  between March 1, 2015 and the Petition Date, and (ii) granting any other and further declaratory relief which is otherwise just and proper and to which Liberty Grande is entitled.

Dated: November 25, 2015
Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Linda Richenderfer*
Linda Richenderfer (DE Bar No. 4138)
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone: (302) 552-5513
Facsimile:  (302) 426-9193

-and-

Paul A. Avron (admitted *pro hac vice*)
Berger Singerman LLP
One Town Center Road, Suite 301
Boca Raton, FL 33486
Telephone: (561) 893-8703
Facsimile: (561) 998-0028

*Counsel to Liberty Grande, LLC*